Deborah J. JONES, individually, and as next Friend of Lanae Elizabeth Jones, and as Representative of the Estate of Lannie L. Jones, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 83–1217.

United States Court of Appeals, Fifth Circuit.

April 6, 1984.

John Gano, Houston, Tex., for plaintiff-appellant.

Jack B. Moynihan, Asst. U.S. Atty., San Antonio, Tex., for defendant-appellee.

Before BROWN, REAVLEY and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The appeal today is significant in two respects: for the facts presented, and for those left unsaid. Briefly, this case involves a suit brought by the wife of a deceased serviceman (plaintiff), individually and as a representative of their minor child and the estate, against the United States for its part in her husband's death. The Government moved to dismiss the claims as barred under *Feres v. United States*, and the District Court granted the motion. On the facts which we have, and applying clear and recent precedent, we in large part affirm that action. More important, however, is what we do not have. Specifically, because we find that under her complaint plaintiff could prove a separate tort committed after the serviceman was discharged from the military, we reverse in part and remand.

## I.

In June 1981, Lannie L. Jones was a 36 year old member of the United States Air Force stationed at Lackland Air Force Base near San Antonio, Texas. On the 15th of that month, Jones was injured when the motorcycle he was driving struck a dog and he was thrown to the ground. He was off the military base and "on pass" at the time of the accident. Jones was taken to the emergency room at Wilford Hall Medical Center—a military hospital on the base, admitted, and treated. Several weeks later while still at the hospital, Jones died.

Plaintiff filed an administrative claim with the Air Force for damages from Jones' death, which claim was denied. She then filed suit in federal court under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) & 2671–2680, a statute which generally waives the immunity of the United States for injury resulting from its or its employees' negligence, and under Texas survival and wrongful death law. Plaintiff asserted that Jones was negligently diagnosed and treated at the military hospital, resulting in his death on July 20, 1981. She also claimed that at a certain point during the period of his treatment—on July 18, 1981—Jones was discharged from the military.

The Government answered and moved to dismiss, asserting that *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), barred the plaintiff's action for damages. The District Court agreed and dismissed the suit. Plaintiff appeals.

## II.

■ We need not attempt here to recount the undulant development of the so-called *Feres* doctrine. It suffices that because of this judicially-created doctrine, the Government is not liable under the FTCA for injury to members of the armed forces arising out of or occurring in the course of activity incident to their military service. *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). *See also Warner v. United States*, 720 F.2d 837, 838 (5th Cir.1983); *Gaspard v. United States*, 713 F.2d 1097, 1100 (5th Cir.1983).

■ It is clear that plaintiff complains mainly about the negligent care and treatment of her husband by the doctors and staff of the military hospital. This Court has long considered medical malpractice suits brought by servicemen or their representatives to fall squarely within the scope of the *Feres* doctrine. *See Scales v. United States*, 685 F.2d 970, 973 (5th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983); *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1150 (5th Cir.1981); *Johnson v. United States*, 631 F.2d 34, 36 (5th Cir.1980), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *Vallance v. United States*, 574 F.2d 1282, 1283 (5th Cir.), *cert. denied*, 439 U.S. 965, 99 S.Ct. 453, 58 L.Ed.2d 423 (1978); *Lowe v. United States*, 440 F.2d 452, 452–53 (5th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1971); *Shults v. United States*, 421 F.2d 170, 171–72 (5th Cir.1969). Plaintiff, however, urges that Jones was "on pass" when his accident occurred, and that he remained "on pass" throughout his medical treatment. She says that because of this otherwise unexplained status he falls outside the reach of *Feres*, citing *Parker v. United States*, 611 F.2d 1007 (5th Cir.1980) (serviceman in-

jured while on 4-day leave allowed FTCA claim), and *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949) (serviceman injured while on furlough allowed FTCA claim).

Plaintiff misinterprets the law. In applying *Feres* to suits for medical malpractice, this Court has normally looked only to whether the serviceman was a member of the armed forces on "active duty" at the time of the asserted improper medical treatment. *See Scales v. United States*, 685 F.2d 970, 973 (5th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983) (child has no FTCA claim for its prenatal injury resulting from asserted negligent medical treatment of mother while she was on active duty); *Johnson v. United States*, 631 F.2d 34, 36 (5th Cir.1980), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981) (no FTCA claim for asserted negligent release from military hospital of mentally ill serviceman, where he had not been discharged from the military); *Vallance v. United States*, 574 F.2d 1282, 1283 (5th Cir.), *cert. denied*, 439 U.S. 965, 99 S.Ct. 453, 58 L.Ed.2d 423 (1978) (no FTCA claim for asserted negligent diagnosis and treatment by military hospital staff of naval officer on active duty); *Lowe v. United States*, 440 F.2d 452, 452–53 (5th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1971) (no FTCA claim for asserted malpractice in performance of elective surgery at military hospital on serviceman, two months before the end of his enlistment); *Shults v. United States*, 421 F.2d 170, 171–72 (5th Cir.1969) (no FTCA claim for asserted malpractice in treatment at military hospital of sailor injured on 48-hour pass but while still on active status).

*Shults* is a good example of this general requirement. There, a serviceman was struck by an automobile while on 48-hour "liberty," a leave that was never formally cancelled during the period of his assertedly negligent medical treatment. Nonetheless, this Court rejected an FTCA suit on his behalf, observing that

it is obvious that the injured man could not have been admitted, and would not have been admitted, to the Naval Hospital except for his military status. He was there treated by Naval medical personnel solely because of that status. It inescapably follows that whatever happened to him in that hospital during the course of that treatment had to be 'in the course of activity incident to service'.

*Id.* at 170–72. As we later remarked, "[w]ith active military status, Shults would have remained in the service had he recovered." *Bankston v. United States,* 480 F.2d 495, 496 (5th Cir.1973). Thus, it is the "active" military status of the serviceman that usually has been the controlling element in barring military medical malpractice suits.[1]

Not surprisingly, the precise nature of "active" status for servicemen is not always clear. In one setting, we have stated that one who has not been discharged (i.e., received his discharge papers) is still a member of the armed forces on active duty. *Garrett v. United States,* 627 F.2d 712, 713 (5th Cir.1980) (no FTCA suit for asserted negligent and illegal detainer of serviceman for two months between the expiration of his enlistment and his formal discharge).

In the context of a medical malpractice case, however, we recently held that the lack of a formal discharge does not *per se* require a finding that the plaintiff was on "active" military duty. *Adams v. United States,* 728 F.2d 736, 739 (5th Cir.1984). There, we clarified the application of the three factors in *Parker v. United States,* 611 F.2d 1007 (5th Cir.1980), for making the "incident to military service" determination under *Feres*—the duty status of the serviceman, the site of injury, and the activity of the serviceman at the time of injury—in medical malpractice cases. We pointed out that "[w]hile no single factor is necessarily dispositive, ... the duty status of the service member is usually considered the most

indicative of the nature of the nexus between him and the government at the time of injury and is therefore the most important factor." *Id.* at 739.

The injured serviceman in *Adams* had been court-martialed several years before he sought treatment at the public service hospital, and all that remained for his formal discharge was for him to report to military authorities. Since "[t]he Army had discharged [the injured man] to the full extent of its ability to do so" prior to the asserted malpractice causing the injury, suit under the FTCA was not barred by *Feres. Id.* at 739. We went on to explain that in medical malpractice cases the remaining two factors—site of injury (i.e., a military or government hospital) and activity of serviceman at time of injury—are "essentially subsumed into the inquiry as to his duty status at the time he sought treatment." *Id.* at 740–741 *See also Bankston v. United States,* 480 F.2d 495, 497–98 (5th Cir.1973).

Be that as it may, plaintiff makes no contention that Jones was practically or legally discharged from the Air Force when the asserted improper diagnosis and treatment occurred. In fact, her claim that Jones was "on pass" throughout most of this medical care and then discharged on July 18 concedes his active duty status. Consequently, Jones' "pass" status before being admitted into and while at the military hospital in no way pretermits the application of the *Feres* doctrine to plaintiff's claims of medical malpractice.

Plaintiff's suit on Jones' behalf thus was correctly dismissed by the District Court. Likewise, *Feres* bars plaintiff's claims on her own behalf and for her and Jones' child. As we stated in *Gaspard v. United States,* 713 F.2d 1097 (5th Cir.1983),

FTCA relief is not available to family members for claims based on the injuries to their relatives in the armed forces. This is true even when the claims of the

---

1. Of course, we do not deal here with an FTCA suit which may be brought by a veteran for medical malpractice occurring after discharge.

*See, e.g., United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954).

family members are independent of the serviceman's cause of action under applicable state law.

... We see no distinction between pendent and independent claims in this regard—we need look only to the factual elements underlying the claim to find them barred under the *Feres* doctrine. *Id.* at 1102 (citations omitted); *see also id.* at 1101–02.

### III.

These conclusions do not dispose of this case, however. In responding to the Government's motion to dismiss, plaintiff significantly clarified her suit. She asserted that Jones was injured at two separate times by two distinct torts. First, she claimed that, when Jones was "on pass," his injuries from the motorcycle accident were wrongly diagnosed and treated. We have held that this claim (and any claim dependent on it) is *Feres*-barred. In addition, however, she contended that Jones was injured in a different way at a time when he was no longer in the military. We have already stated that plaintiff claimed that the Air Force discharged Jones on July 18, 1981, about a month after his motorcycle accident and while he was still in the hospital. She further asserted that two days later, on July 20, 1981, a doctor at the military hospital negligently ended Jones' life by turning off his oxygen and life support system—an act distinct from the assertedly negligent diagnosis and treatment given him at the hospital. Concluding that Jones was a civilian (albeit a veteran) when the doctor wrongly ended his life, she reasoned that *Feres* was inapposite. *See supra*, n. 1. The District Court rejected this argument *without discussion.*

The Government now seeks to rebut the plaintiff's contentions in maintaining that her complaint on its face does not allege such separate torts. The Government seems to concede that Jones was discharged on July 18, 1981. However, it emphasizes that plaintiff's pleadings can only be read to allege the single tort of

medical malpractice, a tort which began when Jones was on active duty, which continued beyond his discharge, and which culminated in his death. Such a continuing tort, the Government argues, is wholly precluded by *Feres.*

Clearly, *Feres* bars plaintiff's FTCA suit for the asserted negligent medical treatment which continued beyond July 18, 1981, when Jones apparently became a civilian. *See Gaspard v. United States*, 713 F.2d 1097, 1100–01 (5th Cir.1983); *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1153–56 (5th Cir.1981). Notwithstanding that, plaintiff argues for what could be a separate tort committed during the post-discharge period.

We must determine whether this allegation can be read from plaintiff's complaint. Of course, we apply the test of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), in scrutinizing pleadings on a motion to dismiss. It must appear beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Id.* at 45–46, 78 S.Ct. at 101–102.

At this point, we reiterate what this Court stated over 17 years ago:

> The Trial Court [has] forgot[ten] the lesson so often brought home by us that at this day and time dismissal of a claim—land-based, waterborne, amphibious, equitable, legal, maritime, or an ambiguous, amphibious mixture of all of them, on the basis of the barebone pleadings is a precarious one with a high mortality rate.

*Barber v. Motor Vessel "BLUE CAT"*, 372 F.2d 626, 627 (5th Cir.1967) (citations and footnote omitted). In the interest of long-term judicial economy and simply as a matter of good practice, this Court has consistently urged trial courts to pause long, before granting motions to dismiss on the face of the pleadings. Here, the Government gave its all-too-reflex cry of "No claim!" and convinced the District Court. Now it presents the case to this Court for resolution on, not crystalline facts quarried from affidavits, depositions, or interrogato-

ries, but merely the broad exhortations of the plaintiff's lawyer. As so often, we are thus presented with just flour and fruit and asked to judge the pie; only seeds and soil, so to rate the harvest.

Under the nonformalistic standard of *Conley v. Gibson*, we find that the Trial Court erred in dismissing all of plaintiff's suit. No doubt, plaintiff could have been infinitely more specific in drafting her complaint. Courts, however, look not for an annotated synthesis of a case, rather only for its outline, in adjudging the adequacy of pleadings. This complaint can fairly be read to include the claim of a discrete, post-discharge tort by one of Jones' doctors.

### IV.

Thus, we generally AFFIRM the action of the District Court, but REVERSE the dismissal of one important part of this suit. We REMAND plaintiff's FTCA and state claims based on the asserted separate post-discharge tort—and only those claims—to the District Court for further proceedings.